Me. Justice Mereicic
delivered the opinion of the Court:
This is one of a series of cases which has been instituted in this Court by the holders of promissory notes drawn by Thomas L. Hume and bearing indorsements in the names of Francis Hume and of the commercial firm of Hume, Cleary & Co., which firm was composed of Thomas L. Plume, the drawer of the notes, of Francis Hume, the first indorser, and of James K. Cleary. At the trial the making of the note by Thomas L. Hume, and the indorsement of the firm name thereon by said Thomas L. Plume, one of the firm, and the notice of protest were admitted, but the signature of Francis Hume as indorser was denied; and after exhibiting the note to the jury the plaintiffs rested. Thereupon the defendants offered the defendants Francis Hume and James K. Cleary as witnesses to prove that the alleged signature of Francis Hume as indorser was a forgery, and that the signature of the firm was made without the knowledge or consent of the defendants, and that Thomas L. Hume had no authority to indorse accommodation paper in the name of the- firm, and that no part of the money borrowed from the plaintiffs ever went to the credit of the firm, or was in any manner used for its benefit, and that Thomas L. *15 Flume was largely engaged in private business outside the firm.
A large amount of testimony in minute detail was given in that connection, to all or nearly all of which the plaintiffs excepted by their first seven bills of exception, but without assigning any specific objections at the trial or in argument upon appeal.
' These exceptions may, therefore, all be disposed of by the observation that this Court decided in the case of Second National Bank vs. Flume, 4 Mackey, 90, that after the formal proofs of execution and notice of protest by the plaintiffs, the defendants are at liberty to show by such proof as may be properly left to the jury that the instrument was procured by fraud or was fraudulent in its inception, or that the consideration was illegal, or that it had been lost or stolen before it came to the possession of the holder, and that when this was done the burden of proof was shifted, and it then became incumbent upon the plaintiffs to show that they acquired the note bona fide for value, in the usual course of business, before maturity, and under circumstances that created no presumption that he knew of the existence of the facts that impeach the validity of the instrument.
It is obvious from the terms of this rule that the evidence offered by the defendants was entirely pertinent, and, in the absence of some specific objection, it was the plain duty of the Court to admit it to go to the jury. After the cause had thus far proceeded, the plaintiff, Thomas J. Fisher, was recalled to show in what manner and under what circumstances and for what value he became the purchaser or holder of the note. In the examination in chief he stated that Thomas L. Hume made application to him for the loan of $2,000; the statement he made was that his concern had some heavy payments to make that day, and that a great many of their best customers were out of the city, and they were.short of funds, and after some conversation he agreed to make the loan; that he had a check drawn to the order of *16 Thomas L. Hume, and Hume then wrote a memorandum, due bill, or a check, he did not remember which; but the memorandum, due bill or check, was thrown into the drawer with the cash, and two or three days afterwards Hume brought a note signed by himself and indorsed, adding these words: “ But the condition of the loan was that his brother Frank should indorse the paper by Frank Hume or his firm,” and delivered it to me; and his check or due bill or whatever it was was surrendered.
The witness further stated that he knew that Thomas L. Hume was a member of the firm, that he had no knowledge except what he stated above of the purpose for which he wanted the money. He further testified that he knew the handwriting of Thomas L. Hume and knew that the firm name was subscribed to the note by him, but did not know anything about Frank Hume’s handwriting. Being asked on cross-examination whether his agreement, at the time he made the loan and gave Thomas L. Hume his check, was that Thomas L. Hume was to come in a few days and give his individual note indorsed by Frank Hume, he replied: “ I do not know that the agreement was that. No, I do not think there was anything further said on that subject. He was to bring in a note with Frank Hume’s indorsement. It would have made no difference to me whether it was Flume, Cleary & Co. or Frank Hume. I do not think we discussed that; the only discussion about it was that it was to have Frank Hume’s indorsement; ” and in answer to succeeding questions the plaintiff said that nothing was said about the indorsement of the firm or about the paper of the firm, and that there was no discussion about the character of the note except that it was to have the indorsement of Frank Hume; and again recurring to his examination at a former trial of the cause the witness, further answering, said that 'all the security he exacted was that Thomas Flume should give a note indorsed by his brother, Frank Hume.
*17 On re-examination, the witness stated that.he loaned the money to Thomas L. Hume for the benefit of the firm, according to his statement. There was some slight verbal variation in the form of question and answer in the course of cross-examination, re-examination and recross; but the shades of difference are too slight to be appreciable on a cold record, whatever influence, derived from manner or emphasis, may have been exerted upon the jury at the trial. It must strike the judicial mind from the circumstances and manner in which the loan was made, and from the hesitation of the plaintiff in declaring whether he gave any credit to the firm as a firm, or whether his whole thought was not the separate credit of the two individual men, Thomas L. Hume and Francis Hume, regardless of the credit of the firm, and in view of the rule of law above stated in respect to the burden which rests upon the plaintiffs after an impeachment of the honesty or legality of the instrument, that it was eminently proper to submit the whole case to the jury to determine, as a matter of fact, whether the holder of the paper at the time he made the loan was dealing with the drawer in his individual capacity, or was dealing with him as a member of the firm for the benefit of the firm; nor was the necessity for the submission disproved by the fact that Thomas L. Hume induced the plaintiffs to believe that he intended to apply the money for the benefit of the firm, and that he made that his sole pretext for asking the loan.
It does not follow when one borrows money, declaring that he intends to use the money in the business of or for the benefit of the firm, that he borrows it upon the credit of the firm. He may well borrow and the lender may naturally deal with him with the exclusive reference to his individuaj. credit. The motives and inducements of the lender are not the motives and inducements of the borrower because of the fact that the former is aware of the purposes of the latter. It follows from these premises that the Court *18 was right in refusing to grant the sixth prayer of the plaintiffs, the object of which was to require the jury to find a verdict for the plaintiffs at all events.
It remains for us to consider whether the instructions which the Court gave to the jury were a full and sufficient guide to them in applying the law to the testimony which was submitted for their scrutiny. The Court granted with very slight verbal modifications the first, second and fifth prayers of the plaintiffs, and the plaintiffs’ third in its original form, and rejected the sixth for the reason already suggested, and also rejected the fourth and seventh. The Court also granted the first and second prayers of the defendants.
By the plaintiffs’ first prayer the jury was instructed that if the plaintiffs' received the note in good faith for value, in the' usual course of business, and without knowledge or notice that the note was made and indorsed by Thomas L. Hume in the firm name for his individual purposes and benefit, or without the authority or assent of the defendants, they should find for the plaintiffs, notwithstanding they might find that, under the partnership agreement, Thomas L. Hume had no authority to make said indorsement of the firm name. By the second, they were instructed that neither the form of the note sued on nor the fact that the indorsement of the firm name was written by Thomas L. Hume, nor the form of the check for the money loaned, indicated as a matter of law that the transaction was 'for the individual benefit of the maker of the note, nor as matter of law imputed notice or knowledge of such purpose to the plaintiffs. By the fifth, the jury were advised that if the plaintiffs had neither knowledge nor actual notice, at the time of the loan, or of the making the note, that Thomas L. Hume was acting in fraud of the copartnership, the plaintiffs were entitled to recover, although they may have acted without care or caution. The fourth prayer was properly rejected, because it was embraced in the second *19 prayer as modified and given by the Court. The seventh prayer was properly rejected because it omitted the important element of knowledge by the plaintiffs, of the want of authority in the drawer to use the firm name for. his private purposes, and seemed -designed to impress the jury with the idea that a member of a firm has the power to use the firm name for all purposes.
The two prayers granted at the instance of the defendants were to the effect that if the money was obtained for individual purposes the burden of proof was thrown on the plaintiffs to show that they had no notice of such purposes; and, secondly, taken in connection with the plaintiffs’ second instruction that the form of the note and check were circumstances, although by and of themselves raising no presumption, which might be taken into account'with all the other facts and circumstances in determining whether the plaintiffs had knowledge of the infirmity of' the transaction.
It seems to us that in all these rulings the Court followed strictly the principles laid down in the case of Second Nat. Bank vs. Hume, 4 Mackey, 90, and that, especially by the fifth instruction, the case was placed before the jury in a way as favorable to the plaintiffs as it could have possibly been put; for the jury were in that instruction explicitly told that want of care or caution on the part of the plaintiffs would not defeat their right of recovery; that nothing short of actual notice or knowledge of the fraud perpetrated upon the partnership would suffice to that end.
Now, all of the instructions being in conformity with law, and the case being of the character peculiarly appropriate for a jury’s estimate of the value to be assigned to the plaintiff’s testimony, this Court does not feel at liberty to grant a new trial upon any of the reasons assigned for the motion, which were considered and deemed insufficient by the Circuit Court.
We may be permitted to say, further, that although *20 the Supreme Court of the United States has declared (Metropolitan R. R. vs. Moore, 121 U. S., 558) that an appeal lies to this Court from a refusal to grant a new trial in cases which heretofore were regarded as addressed exclusively to the sound discretion of the trial justice, and, therefore, not appealable yet we are of opinion that the case ought to be a very strong one in which an appellate tribunal would assume the responsibility, deprived as they are of the advantage of the personal presence of the witnesses — an advantage so great that it is secured to the parties at the trial before the jury as an almost sacred right. And, indeed, the following extract from the opinion of the Supreme Court fully sustains this view:
“ It is quite true, nevertheless, that the judge sitting at special term on the trial of a cause by a jury is, from the nature of the case, better qualified, because he sees the witnesses and hears them testify, to judge whether the verdict is warranted by the evidence, than other judges,'even of the same Court, upon a report of the testimony in writing; and where the question comes up in General Term on an appeal, all proper allowances will be made in its consideration for that difference, and its due weight given to the order of the judge at special term denying the motion.”

A new trial is refused, and the judgment is affirmed.